**Joshua A. WILLIS, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 30A05–0307–CR–348.

Court of Appeals of Indiana.

April 21, 2004.

Stephen Gerald Gray, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Senior Judge.

### Case Summary

Appellant-defendant Joshua A. Willis appeals his conviction for operating a vehicle while intoxicated, a Class D felony.[1] We affirm.

### Issues

Willis raises two issues on appeal, which we restate as follows:

I. Whether the trial court properly denied Willis' motion to dismiss, and

II. Whether there was sufficient evidence to sustain Willis' conviction.

### Facts and Procedural History

On May 20, 2003, Willis and the State submitted the following stipulation of facts to the trial court:

On January 12, 2001, [Willis] was operating a vehicle in Hancock County. Greenfield police responded to the 300 Block of West North Street and observed Willis' vehicle parked partially on the sidewalk. All events occurred [sic] in the State of Indiana.

Officers observed [Willis] to have slurred speech, glassy eyes, poor manual dexterity, and poor balance. Willis failed [five] field sobriety tests; one legged stand, walk and turn, gaze nystagmus, finger to nose and backward count. There was an odor of burnt marijuana on his person.

Prior to transporting for a chemical test, a pat down search was performed. A plastic bag was slightly protruding from the top of [Willis'] waistband. The officer asked what the bag was and [Willis] responded, "nothing." At this time the officer pulled the bag from his pants and found $1,300.00 cash. No drugs or paraphenalia [sic] were found on Willis or in his vehicle.

Willis was transported to Hancock Memorial Hospital and tested for substances. Willis tested positive for marijuana at 32 ng/ml, but negative for alcohol. A triage drug screen showed a positive test for Benzodiazepine but a subsequent drug confirming study showed a negative test for Benzodiazepine, but a positive test for cannabinoid.

[Willis] has a prior conviction for operating while intoxicated in Hancock County on May 3, 1998 under cause no. 30D02–9806–CM–546.

[Willis] was observed by off duty officer Toby Holliday trying to back [his] vehicle off the sidewalk and back onto the street.

Appellant's App. at 5 (emphasis deleted).

On March 27, 2001, *before* the parties stipulated to the facts above, the State filed a complaint for forfeiture, alleging that the $1,300.00 found on Willis' person and seized by police at the time of his arrest constituted proceeds from the sale of controlled substances. On April 10, 2003, the parties proceeded to trial on the State's forfeiture complaint. Evidence was presented, and the trial court took the matter under advisement.

On May 14, 2003, Willis filed a motion to dismiss the criminal charge in the present cause, arguing that the earlier forfeiture proceeding barred the instant criminal

---

1. *See* Ind.Code §§ 9–30–5–1 and –3.

proceeding due to double jeopardy principles. The trial court denied Willis' motion to dismiss on May 15, 2003.

On June 5, 2003, the trial court found Willis guilty of operating a vehicle while intoxicated, a Class D felony. This appeal ensued.

## Discussion and Decision

### I. Motion to Dismiss/Double Jeopardy

Willis argues that the trial court erroneously denied his motion to dismiss. Specifically, Willis asserts that when the forfeiture complaint went to trial, a risk of punishment occurred and therefore jeopardy attached. Thus, Willis concludes, the State's subsequent prosecution of the criminal charges was an impermissible attempt to punish him a second time.[2] We disagree.

The issue before us, whether double jeopardy principles preclude the use of the same facts to support both a forfeiture proceeding for money confiscated by the police and a subsequent criminal prosecution, is a pure question of law. We therefore conduct a *de novo* review. *See Wilcox v. State*, 748 N.E.2d 906, 909 (Ind.Ct.App. 2001), *trans. denied.*

"The Double Jeopardy Clause provides, '[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.'" *United States v. Ursery*, 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (quoting U.S. Const. amend. V). This clause is applicable to the states through the Fourteenth Amendment and protects a person from suffering (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Bryant v. State*, 660 N.E.2d 290, 295 (Ind.1995), *cert. denied.* In other words, the Double Jeopardy Clause prohibits the government from "punishing twice, or attempting a second time to punish criminally for the same offense." *Ursery*, 518 U.S. at 273, 116 S.Ct. 2135 (quotation marks omitted).

Since the earliest years of this nation, however, "Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events." *Id.* at 274, 116 S.Ct. 2135. Moreover, in a long line of cases, the United States Supreme Court has considered the application of the Double Jeopardy Clause to civil forfeitures, and has consistently concluded that the Clause does not apply to such actions because they do not impose punishment. *Id.* This is true, according to the Supreme Court, because "[i]n rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause." *Id.* at 278, 116 S.Ct. 2135. In other words, a forfeiture proceeding is *in rem* because it is the property that is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. *Id.* at 275, 116 S.Ct. 2135. To the contrary, in a criminal prosecution, it is the wrongdoer who is proceeded against, convicted, and punished. *Id.* Thus, the forfeiture is no part of the punishment for the criminal offense, and the provision of the Fifth Amendment to the United States Constitu-

2. We note that the case law counsel relied upon on appeal was decided pursuant to the Double Jeopardy Clause of the United States Constitution. Counsel does not advance a separate state constitutional argument. For this reason, we decide this case based solely upon the federal Double Jeopardy Clause. *See State v. Klein*, 702 N.E.2d 771, 773 (Ind. Ct.App.1998), *trans. denied.*

tion in respect to the Double Jeopardy Clause does not apply. *Id.*

█ The *Ursery* court reiterated the appropriate two-step test in determining whether an *in rem* civil forfeiture violates the Double Jeopardy Clause. First, we must ask whether the Legislature intended the proceeding to be civil or criminal. *Ursery*, 518 U.S. at 288, 116 S.Ct. 2135; *see also State v. Hurst*, 688 N.E.2d 402, 404 (Ind.1997). If we determine that a civil proceeding was intended, then we must next consider whether the party challenging the statute has provided the "clearest proof" that the statutory scheme is so punitive, either in form or effect, as to render it criminal despite the Legislature's intention to the contrary. *See Ursery*, 518 U.S. at 290, 116 S.Ct. 2135; *see also Hurst*, 688 N.E.2d at 404.

█ There is little doubt that our Legislature intended forfeiture proceedings pursuant to Indiana Code Article 34–24 to be civil proceedings. Our Legislature's intent in this regard is clearly demonstrated in that the forfeiture statute is not part of our state's criminal code, but is instead located under a civil law title denominated "Civil Proceedings Related To Criminal Activities." *See* Ind.Code 34–24. Additionally, while our forfeiture statute is "not totally divorced from the criminal law" in that it requires the State to demonstrate that the property sought in forfeiture was used in connection with criminal activities, this fact is insufficient to render the statute punitive. *See Ursery*, 518 U.S. at 292, 116 S.Ct. 2135; *see also Katner v. State*, 655 N.E.2d 345, 348 (Ind.1995). Moreover, our supreme court has previously explained that:

> [F]orfeiture simultaneously advances other non-punitive, remedial legislative goals. First, forfeiture creates an economic disincentive to engage in future illegal acts. It also serves another sig-

nificant, albeit secondary, purpose. Forfeiture advances our Legislature's intent to minimize taxation by permitting law enforcement agencies, via the sale of property seized, to defray some of the expense incurred in the battle against drug dealing. It is these broad remedial characteristics which support . . . [a] determination that forfeiture actions are civil in nature.

*Katner*, 655 N.E.2d at 347–48. Procedural mechanisms contained in the forfeiture statute further indicate our Legislature's intention that such proceedings be civil. For example, a conviction on the underlying criminal activity is not a prerequisite for forfeiture. *See Katner*, 655 N.E.2d at 348. Additionally, the State need only show that the facts supporting forfeiture exist by a preponderance of the evidence— a civil burden of proof. Ind.Code § 34–24–1–4(a); *see also Katner*, 655 N.E.2d at 348. The imposition of this civil standard of proof is strong evidence that the forfeiture statute was not intended to be a criminal sanction. *See Wilcox*, 748 N.E.2d at 912.

█ Having determined that our Legislature intended forfeiture proceedings pursuant to Indiana Code Article 34–24 to be civil in nature, we must next decide whether Willis has provided "the clearest proof" that these proceedings are so punitive in form and effect as to render them criminal despite our Legislature's intent to the contrary. In making this determination, the factors listed in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) provide the following useful guideposts: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punish-

ment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may be rationally connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.[3] *Id.* at 168–69, 83 S.Ct. 554; *see also Hudson v. U.S.*, 522 U.S. 93, 99–100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). It is important to note that these factors must be considered in relation to the statute *on its face*, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Hudson,* 522 U.S. at 100, 118 S.Ct. 488.

**3.** In his brief, Willis argues that several cases support an alternative rule that forfeiture can only be deemed civil for double jeopardy purposes if the value of the property seized is proportional to the resources expended by the State in its investigation. In support of this argument, Willis directs our attention to the following cases: *Hurst,* 688 N.E.2d at 404 (stating that if, after assessing the character and purpose of the sanction in the particular case, the court determines that the sanction serves the purpose of punishment, then the court may conclude that the sanction is the equal of criminal punishment under the protection of the Double Jeopardy Clause); *Bryant,* 660 N.E.2d at 295–96 (stating that the test for determining whether a forfeiture may be deemed punishment for double jeopardy purposes turns on a determination of whether the punishment served the remedial purposes of compensation of the government for its losses); *Klein,* 702 N.E.2d at 774–75 (holding that the forfeiture of the defendant's car was "punishment" for double jeopardy purposes because the forfeiture failed to serve any other remedial goal, such as compensating the government for its losses); *Head v. State,* 683 N.E.2d 1336, 1338 (Ind.Ct.App.1997) (stating that the test for determining whether a civil sanction is a "punishment" for double jeopardy purposes requires an inquiry as to whether the sanction serves the remedial purposes of compensating the government for its losses). This line of cases relies on *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104

Turning to this second part of our analysis, we find that there is little evidence, much less "the clearest proof," that Indiana's forfeiture statute is so punitive in form and effect as to render it criminal for double jeopardy purposes.

Indiana Code Section 34–24–1–1(a)(2), which authorizes the forfeiture of money used as consideration for the commission of drug and other offenses, provides, in relevant part, as follows:

(a) The following may be seized:

. . . .

(2) All money, negotiable instruments, securities ... or any property commonly used as consideration for a violation of IC 35–48–4 . . . :

L.Ed.2d 487 (1989), at least in part, and suggests that forfeiture must be rationally related to expenditures of the State. However, this divergence from the traditional test was rebuked by the United States Supreme Court in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). In *Hudson,* the Supreme Court acknowledged its deviation in *Halper* from the traditional test which employed the *Kennedy* guideposts and stated that the deviation was "ill considered" because it: (1) focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute punishment thereby elevating a single *Kennedy* factor to dispositive status, and (2) assessed the character of the actual sanctions imposed rather than evaluating the civil statute on its face as the traditional test demands. *Id.* at 494. The Supreme Court thereafter concluded that the case-by-case analysis employed in *Halper* was unworkable.

Recently, Indiana Supreme Court Justice Sullivan and Chief Justice Shepard also rejected the *Halper* "rationally related" analysis in their dissent from a denial of a petition to transfer, *see State v. Klein,* 719 N.E.2d 386 (Ind.1999), as did another panel of this Court in *O'Connor v. State,* 789 N.E.2d 504, 509–10 (Ind.Ct.App.2003), *trans. denied.* We, too, reject this alternative method of analysis and proceed with the traditional test set forth in *Kennedy* and reaffirmed in *Hudson.*

(A) furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute;

(B) used to facilitate any violation of a criminal statute; or

(C) traceable as proceeds of the violation of a criminal statute.

Clearly, as can be seen from the language set forth above, our forfeiture statute does not impose an affirmative disability or restraint. Furthermore, "it is absolutely clear that *in rem* civil forfeiture has not historically been regarded as punishment, as we have understood that term under the Double Jeopardy Clause." *Ursery,* 518 U.S. at 292, 116 S.Ct. 2135. Additionally, the fact that the forfeiture statute is not totally divorced from criminal law, in that the State must show some nexus between the property sought in forfeiture and the underlying offense that is more than incidental or fortuitous, does not render the sanctions contained therein criminally punitive. *See id.* It is well settled that the Legislature may impose both a criminal and civil sanction in respect to the same act or omission. *Id.; see also Wilcox,* 748 N.E.2d at 913 (stating that the fact that certain conduct subject to civil remedies may also violate criminal law does not render the civil sanctions applicable to that conduct criminally punitive). We further note that there is no requirement that the State demonstrate scienter in order to establish that the property is subject to forfeiture, and that the existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes. *Wilcox,* 748 N.E.2d at 913. Finally, while the forfeiture statute may fairly be said to serve the purpose of deterrence, by making certain criminal endeavors unprofitable, the U.S. Supreme Court has long held that deterrence may serve civil as well as criminal goals. *Ursery,* 518 U.S. at 292, 116 S.Ct. 2135; *see also Wilcox,* 748 N.E.2d at 913 (stating that the mere existence of a deterrent purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals).

Based on the foregoing, we find that there is little evidence, much less the "clearest proof," suggesting that Indiana's *in rem* civil forfeiture statute is so punitive in form and effect as to render it criminal. Accordingly, double jeopardy did not attach during the forfeiture proceeding and the trial court properly denied Willis' motion to dismiss.

## II. Sufficiency

■ Willis also asserts that there was insufficient evidence to support his conviction. Willis admits that he tested positive for marijuana on the night he was arrested. However, Willis claims that the State failed to prove that he was "intoxicated" because, unlike for alcohol, there is no statutorily defined level of ingestion for marijuana indicating intoxication or impairment, and the State failed to produce any evidence to prove that a blood level of 32 ng/ml is enough to produce an intoxicating effect. Willis' arguments are not well taken.

■ When reviewing a claim challenging the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Kendall v. State,* 790 N.E.2d 122, 128 (Ind.Ct.App.2003), *trans. denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the conviction. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.* at 122–23.

The term "intoxicated" means under the influence of (1) alcohol, (2) a controlled substance (as defined in Indiana Code 35–48–1), (3) a drug other than alcohol or a controlled substance, or (4) a combination

of alcohol, controlled substances, or drugs "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person." Ind.Code § 9–13–2–86. Marijuana is a Schedule I controlled substance. Ind.Code § 35–48–2–4(d)(14).

On the night of his arrest, police officers observed that Willis had slurred speech, glassy eyes, poor manual dexterity, and poor balance. Willis also failed five field sobriety tests and smelled of burnt marijuana. Additionally, Willis admits on appeal that he tested positive for marijuana at 32ng/ml on the night he was arrested. This evidence clearly supports the trial court's conclusion that, on the night Willis was arrested, he was under the influence of a controlled substance such that he exhibited an impaired condition of thought and action and the loss of normal control of his faculties to an extent that endangered a person. In other words, the evidence shows that Willis was intoxicated.

Affirmed.

ROBB, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I fully concur as to Part II.

With regard to Part I, I agree that the proceeding for civil forfeiture of the $1300 found on Willis's person at the time of his arrest for operating a vehicle while intoxicated does not bar the prosecution for the driving while intoxicated conviction being appealed. I note that although jeopardy had attached in the forfeiture proceeding, there was no judgment entered. Thus, there was no determination by the court in the forfeiture proceeding that was akin either to "acquittal" or "conviction." Therefore, the question before this court and as treated by the majority opinion, is whether the forfeiture statute denominated as a "civil" forfeiture, is in actuality a punishment.

If Willis were being prosecuted criminally for selling controlled substances as alleged by the State in the forfeiture proceeding, I might well conclude that forfeiture of the money obtained through the sale or sales was clearly punishment for the sale or sales themselves. In such instance I might therefore conclude that a prosecution for selling controlled substances which resulted in the $1300 would be barred.

However, the offense for which Willis was here convicted was for operating a vehicle while intoxicated. There was no nexus between this offense and the possession of the money. I do not therefore find any permissible inference that the forfeiture was punishment for operating the vehicle while intoxicated.

For this reason I concur as to Part I.