$100 and A Black Cadillac, VIN 1G6K52B3PU807567, Appellants–Defendants,

and

Abbie Ellenstein, Appellant–Respondent,

v.

STATE of Indiana and Evansville Police Department, Appellees–Plaintiffs.

No. 82A01–0310–CV–421.

Court of Appeals of Indiana.

Feb. 18, 2005.

Transfer Denied May 26, 2005.

⚷5.1

John D. Clouse, Ivan A. Arnaez, Clouse Law Offices, Evansville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorney for Appellees.

## OPINION

MAY, Judge.

Abbie [1] Ellenstein appeals the forfeiture of her Cadillac pursuant to Ind.Code § 34–24–1–1 ("the forfeiture statute").[2] She

---

1. Many documents in the record indicate the spelling of Ellenstein's name is "Abbi." However, her brief indicates the spelling is "Abbie."

2. Ind.Code § 34–24–1–1 provides for seizure of vehicles, money, and other property used in crimes involving drugs.

We note Ellenstein's brief gives the impression the trial court ordered forfeited to the State the Cadillac *and* the $100.00 found therein. (*See* Br. of Appellant at 4) ("The Court agreed concerning the car and money [found in the car] ... but found against the State in [the other cause]."). However, the transcript indicates the Court ordered only

raises two issues on appeal, which we reorder and restate as:

1. Whether the evidence is sufficient to support the trial court's finding Ellenstein must forfeit the Cadillac; and

2. Whether the forfeiture statute is unconstitutional.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are not in dispute. On March 5, 2003, police were conducting surveillance of a suspected drug house when Ellenstein drove a 1993 black Cadillac away from the house. A police officer followed the Cadillac and pulled it over because it was speeding and nearly caused an accident. As police were obtaining identification from Ellenstein, they detected an odor of marijuana coming from the car. Based on that probable cause, the officers searched the Cadillac and found a pound of marijuana, $100.00, and burnt marijuana roaches. Police asked Ellenstein for permission to search her house, and she consented. In the house, officers found $998.00 and a notebook resembling a drug ledger. Police arrested Ellenstein and seized the Cadillac, the $100.00 in the Cadillac, and the $998.00 found in Ellenstein's home.

Under cause number 82D02–0303–FD–205, the State charged her with two counts of dealing in marijuana as a Class D felony[3] and one count of maintaining a common nuisance, a Class D felony.[4] Ellenstein pled guilty to one count of dealing in marijuana as a Class A misdemeanor, and the State dismissed the other two charges. The Court entered Ellenstein's conviction

and sentenced her to one year imprisonment, which the court suspended contingent on Ellenstein attending drug rehabilitation classes.

Six days after Ellenstein pled guilty and was sentenced, the State filed two forfeiture complaints against Ellenstein. The first, cause number 82C01–0305–MI–295, demanded forfeiture of the black Cadillac and the $100.00 police had found therein. The second, cause number 82C01–0305–MI–294, demanded forfeiture of the $998.00 found in Ellenstein's home.

At the forfeiture trial, the State introduced evidence that possession of one pound of marijuana is more likely associated with dealing than with personal use and that Ellenstein had pled guilty to dealing. In addition, the State presented an alleged drug ledger found in Ellenstein's home and the $998.00. Ellenstein testified she purchased marijuana in bulk for her own personal use to decrease the frequency of her exposure to arrest, she was able to purchase a pound of marijuana that day because she had received her tax refund check, the cash in her house was from the tax refund check, and the alleged drug ledger was simply a notebook to organize checks. The Court found the State had to return to Ellenstein the $998.00 found in her house and the $100.00 found in the Cadillac; however, it ordered the Cadillac forfeited.

## DISCUSSION AND DECISION

### 1. *Sufficiency of the Evidence*

The relevant portions of the forfeiture statute provide:

(a) The following may be seized:

---

the Cadillac forfeited. (*See* App. at 97) ("The vehicle is forfeited, the thousand dollars in the home and the hundred dollars are to be returned to the defendant.").

**3.** Ind.Code § 35–48–4–10(a)(2).

**4.** Ind.Code § 35–48–4–13(b)(2).

(1) All vehicles . . ., if they are used or are intended for use by the person or persons in possession of them to transport or in any manner to facilitate the transportation of the following:

(A) A controlled substance for the purpose of committing, attempting to commit, or conspiring to commit any of the following:

\* \* \* \* \*

(viii) Dealing in marijuana, hash oil, or hashish (IC 35–48–4–10).[5]

Ind.Code § 34–24–1–1 (footnote added). For a trial court to properly order property forfeited, the State "must show by a preponderance of the evidence' that the property was within the definition of property subject to seizure under section one of this chapter." Ind.Code § 34–24–1–4(a).

▉▉▉ Because forfeiture cases are civil in nature, we use the standard of review employed in other civil cases where an appellant questions the sufficiency of the evidence to support a verdict. *Jennings v. State*, 553 N.E.2d 191, 192 (Ind.Ct.App.

1990), *reh'g denied*. We consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn therefrom. *Id.* We may neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* "Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of the plaintiff's claim will we reverse a trial court." *Id.* (quoting *Martin v. Roberts*, 464 N.E.2d 896, 904 (Ind.1984)).

▉▉▉ Ellenstein argues the evidence was insufficient because "guilty plea evidence is unreliable."[6] (Br. of Appellant at 15.) She claims "[g]uilty pleas have little if almost no evidentiary value due to problems inherent in them." (*Id.* at 16.) All of the problems Ellenstein lists are related to the premise that people plead guilty to misdemeanor convictions to avoid felony trials, convictions, and sentences. However, Ellenstein's brief provides in a footnote:

Counsel is not arguing here that his client's guilty plea was a sham or that he

---

**5.** Ind.Code § 35–48–4–10 provides, in pertinent part:

(a) A person who:
\* \* \* \* \*
(2) possesses, with intent to:
\* \* \* \* \*
(C) deliver . . .
\* \* \* \* \*
marijuana, hash oil, or hashish, pure or adulterated;
commits dealing in marijuana, hash oil, or hashish, a Class A misdemeanor, except as provided in subsection (b).
(b) The offense is:
(1) a Class D felony if:
\* \* \* \* \*
(B) the amount involved is more than thirty (30) grams but less than ten (10) pounds of marijuana. . . .

**6.** Ellenstein also argues the evidence was insufficient because the police officer should not have been permitted to testify that posses-

sion of a pound, or 453.6 grams, of marijuana typically indicates an intent to deal. She believes that testimony was improper opinion testimony regarding her intent, citing *Scisney v. State*, 690 N.E.2d 342, 345 (Ind.Ct.App. 1997), *affirmed in relevant part, vacated on other grounds* 701 N.E.2d 847 (Ind.1998). However, she has simply quoted Evid. Rule 704, quoted the relevant testimony, provided the citation for *Scisney*, and stated: "Ms. Ellenstein alleges that this evidence is inadmissible. It is an opinion of intent." (Br. of Appellant at 16.) Ellenstein has waived this allegation by error by failing to provide adequate argument pursuant to Ind. Appellate Rule 46(A)(8). *See West v. State*, 755 N.E.2d 173, 181 n. 4 (Ind.2001). Waiver notwithstanding, we need not determine the admissibility of that evidence because any error in the admission of that testimony would be harmless; the court could rely on her guilty plea to find by a preponderance of the evidence that the car was used to transport marijuana for the purpose of dealing. *See infra.*

has knowledge that his client is innocent but rather puts forth the argument that her guilty plea for later trial use has little evidentiary value due to theoretical problems inherent in any guilty plea. (*Id.* at 16 n. 1.) Accordingly, Ellenstein admits she has no complaint about the validity of her guilty plea,[7] but she nonetheless wants us to presume it has little evidentiary value. This we cannot do.

Trial courts and juries frequently rely on the existence of prior convictions to support a finding that a defendant committed a crime in the past. *See, e.g., Goliday v. State,* 526 N.E.2d 1174, 1176 (Ind.1988) (prior conviction sufficient to support habitual offender determination). We permit the same inference regardless of whether the prior conviction rests on a finding by the fact-finder or on a guilty plea by a defendant. *See, e.g., Tyson v. State,* 766 N.E.2d 715, 718 (Ind.2002) (holding information, plea agreement, and court minutes were sufficient to demonstrate beyond a reasonable doubt defendant had prior conviction). In fact, a prior guilty plea is sufficient for the trial court to find by a preponderance of the evidence that a defendant committed the alleged offense even if the prior guilty plea was entered without the defendant admitting commission of the offense. *Williams v. State,* 695 N.E.2d 1017, 1019 (Ind.Ct.App.1998) (holding *Alford* plea for commission of misdemeanor crime in another state was sufficient to support revocation of defendant's probation in Indiana).

Ellenstein's guilty plea to dealing in marijuana was sufficient to permit the trial court to conclude by a preponderance of the evidence that, when Ellenstein was in her Cadillac with a pound of marijuana, she was transporting it for the purpose of committing dealing in marijuana. *See id.* We must decline Ellenstein's request that we reweigh the evidence.

### 2. Constitutionality of Statute[8]

Ellenstein asserts a number of reasons why the forfeiture statute is unconstitutional. Whether a statute is con-

---

7. If Ellenstein were challenging the validity of her guilty plea, such argument also would have failed. We follow a general rule that judgments are presumed to be valid and, if regular on their faces, are not subject to collateral attack. *Estate of Goodwin v. Goodwin,* 721 N.E.2d 886, 889 (Ind.Ct.App.1999). Society has an interest in judgments being final, and we therefore indulge "every reasonable presumption ... in favor of the validity of the judgment sought to be impeached." *Id.* Because of these policy concerns, our supreme court has noted:

> In Indiana the general rule is that the alleged invalidity of predicate felony convictions may not be challenged during habitual offender proceedings when the prior final judgments are regular on their face. The habitual offender hearing is not the proper forum to contest the validity of these prior convictions. The proper procedure to challenge this type of predicate conviction is for the accused to set aside the predicate conviction in a direct attack through appeal or

post-conviction relief in the court of conviction.

*Edwards v. State,* 479 N.E.2d 541, 547 (Ind. 1985). The same rule applies to convictions based on guilty pleas. *Rivera v. State,* 515 N.E.2d 534, 536 (Ind.1987) (defendant's challenge to the validity of his prior guilty pleas in habitual offender proceedings "is not available in this appeal"). We see no reason a different rule should apply in forfeiture proceedings.

8. In the section of her brief devoted to constitutional arguments, Ellenstein asserts the State's complaint violated Trial Rule 8, which provides "All fictions in pleading are abolished." Ellenstein has not explained why a violation of Trial Rule 8 would amount to a constitutional violation. Nor has she demonstrated Trial Rule 8 was intended to abolish *in rem* proceedings. Accordingly, she failed to provide meaningful argument and has waived the Trial Rule 8 assertion for appeal. *See West,* 755 N.E.2d at 181 n. 4.

stitutional is a question of law. Therefore, we review each argument *de novo*. *See Willis v. State*, 806 N.E.2d 817, 820 (Ind. Ct.App.2004). We presume the statute is constitutional, and Ellenstein has the burden of proving it is not. *McManus v. State*, 814 N.E.2d 253, 255 (Ind.2004). We must resolve all reasonable doubts in favor of the statute's constitutionality. *State v. Lombardo*, 738 N.E.2d 653, 655 (Ind.2000).

### a. *Double Jeopardy Clause*

Ellenstein alleges the forfeiture of her Cadillac, after she was convicted of dealing marijuana as a Class A misdemeanor, constituted a second punishment for a crime, which is prohibited by the federal constitution.[9] We disagree.

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause prohibits both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Important to Ellenstein is the fact that the Clause prohibits the government from "attempting a second time to punish criminally for the same offense." *Id.*

The State obtained Ellenstein's Cadillac by way of a forfeiture proceeding. Forfeiture proceedings have characteristics of both civil and criminal proceedings, as they serve both remedial and punitive goals. *Katner v. State*, 655 N.E.2d 345, 347 (Ind.

1995). In fact, forfeiture of expensive or important items, such as a car or house, can have a "significant and potentially severe punitive function." *Id.* Therefore, we must determine whether the forfeiture proceeding by which the State confiscated Ellenstein's Cadillac constituted a "criminal punishment" for purposes of the Double Jeopardy Clause.

The statute under which the State obtained title to the Cadillac was Ind.Code § 34–24–1–1, which permits the State to seize money or property that is used to commit or attempt to commit certain crimes. Causes of action filed against property rather than against a person are actions *in rem*.[10] Accordingly, a forfeiture action under Ind.Code ch. 34–24–1 is an *in rem* action. *C.R.M. v. State*, 799 N.E.2d 555, 558 (Ind.Ct.App.2003); *see also State v. Klein*, 702 N.E.2d 771 (Ind.Ct.App.1998) (treating State's seizure of car under prior version of Ind.Code § 34–24–1–1 as an *in rem* proceeding), *trans. denied* 726 N.E.2d 306 (1999).

"Since the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events." *Ursery*, 518 U.S. at 274, 116 S.Ct. 2135. The United States Supreme Court has considered whether such parallel proceedings violate the Double Jeopardy Clause, "consistently concluding that the Clause does not apply

---

9. Ellenstein alleges the forfeiture violates the double jeopardy provisions of both the federal and state constitutions. However, as she provides no separate argument under the Indiana Constitution and as she cites only cases discussing federal law, she has waived her argument under the Indiana Constitution. *See White v. State*, 772 N.E.2d 408, 411 (Ind. 2002) (waiving state constitutional argument where appellant provided only federal analysis).

10. *"In rem"* means "against a thing." Black's Law Dictionary 797 (7th ed.1999). An "action *in rem*" determines "the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property." *Id.* at 30.

to such actions because [civil forfeitures] do not impose punishment." *Id.*

▮ Nevertheless, the Supreme Court has developed a two-part test to determine whether, in a specific case, an *in rem* forfeiture constitutes punishment for Fifth Amendment purposes. *Id.* at 288, 116 S.Ct. 2135. First, we ask whether the legislature intended the proceedings under a forfeiture statute to be civil or criminal. *See id.* Second, we determine "whether the proceedings are so punitive in fact as to 'persuade us that the forfeiture proceedings may not legitimately be viewed as civil in nature,' despite [the legislature's] intent." *Id.* (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 366, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)).

Under the first step of this analysis, we have no doubt that our legislature intended forfeitures under Ind.Code ch. 34–24–1 to be civil in nature. We have so held on at least two occasions. *C.R.M.*, 799 N.E.2d at 558; *Klein*, 702 N.E.2d at 774. Moreover, our supreme court held the legislature intended proceedings under the prior version of this statute to be civil. *Katner*, 655 N.E.2d at 347 (discussing Ind. Code § 34–4–30.1–1, which was repealed in 1998 and replaced by Ind.Code § 34–24–1–1).

Under the second step, we are to consider whether, despite the legislature's intent, the proceedings are so punitive we must consider the forfeiture a criminal proceeding. *Ursery*, 518 U.S. at 274, 116 S.Ct. 2135. The Supreme Court has stressed that to find a statute criminal despite Congress' intent to the contrary, we need the "clearest proof" that the statutes are punitive in form and effect. *Id.* at 290, 116 S.Ct. 2135. Some of the factors we may consider when making that determination include: 1) whether the statutes "serve important nonpunitive goals," *id.*, such as abating a nuisance, removing profits of

illegal acts and ensuring property owners do not allow their property to be used for illegal purposes, *id.*; 2) whether the government's action has historically been regarded as punishment, *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); 3) whether there is a requirement that the government demonstrate *scienter*, *id.*; 4) whether the deterrence serves civil as well as criminal goals, *id.*; 5) whether the "sanction involves an affirmative disability or restraint," *id.*; 6) whether the sanction is tied to criminal activity, *id.*; and 7) whether the civil sanction is excessive when compared to the purpose. *Id.*

To determine whether Ellenstein's *in rem* forfeiture is a criminal punishment for Fifth Amendment purposes, we follow *Ursery*. *In rem* forfeitures have historically been held to be civil, not criminal proceedings. *See Ursery*, 518 U.S. at 287, 116 S.Ct. 2135. While forfeiture under Ind. Code § 34–24–1–1 is tied to criminal activity, the government is not required to establish *scienter*. *See, e.g., id.* at 291, 116 S.Ct. 2135. Moreover, although Ind.Code § 34–24–1–1 may deter criminal behavior by being punitive, that punitive nature has both criminal and civil purposes. As our supreme court explained when discussing the prior version of the forfeiture statute:

> Serving more than a punitive purpose, civil forfeiture proceedings advance diverse legislative interests—while punishing and deterring those who have engaged in illegal drug activity, forfeiture simultaneously advances other non-punitive, remedial legislative goals. First, forfeiture creates an economic disincentive to engage in future illegal acts. It also serves another significant, albeit secondary, purpose. Forfeiture advances our Legislature's intent to minimize taxation by permitting law enforcement agencies, via the sale of property

seized, to defray some of the expense incurred in the battle against drug dealing. It is these broad remedial characteristics which support [a] determination that forfeiture actions are civil in nature. *Katner*, 655 N.E.2d at 347. This evidence does not provide the " 'clearest proof' necessary to show that a proceeding is criminal." *See Ursery*, 518 U.S. at 292, 116 S.Ct. 2135. Therefore, we hold this *in rem* forfeiture under Ind.Code § 34–24–1–1 is civil for purposes of the Fifth Amendment's Double Jeopardy Clause. *See C.R.M.*, 799 N.E.2d at 561 (holding *in rem* forfeiture of $500.00 pursuant to Ind.Code § 34–24–1–1 was civil for Fifth Amendment purposes).

Ellenstein's right to be free from double jeopardy was not violated when the State seized her car after she pled guilty to dealing in marijuana.

b. *Excessive Fines Clause*

Ellenstein claims the forfeiture of her Cadillac violates the prohibition in the United States Constitution against excessive fines.[11] We disagree.

 The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. At the time that constitution was adopted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *United*

States v. Bajakajian, 524 U.S. 321, 327, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (quoting *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). Thus, the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.' " *Bajakajian*, 524 U.S. at 328, 118 S.Ct. 2028 (quoting *Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)).

 We determined above that the forfeiture at issue was not "punishment" for purposes of the Double Jeopardy Clause. However, the test for whether forfeiture is a "punishment" is different for the Excessive Fines Clause. *Ursery*, 518 U.S. at 286, 116 S.Ct. 2135. The Supreme Court has noted "the Excessive Fines Clause of the Eighth Amendment [is] a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment." *Id.* To determine whether a fine or forfeiture is punishment for the Excessive Fines Clause we take a categorical approach,[12] *id.* at 287, 116 S.Ct. 2135, and consider whether the type of forfeiture created by the statute at issue can "be explained as serving in part to punish."[13] *Austin*, 509 U.S. at 610, 113 S.Ct. 2801. "We need not exclude the possibility that a forfeiture serves remedial

---

**11.** Ellenstein quoted the analogous section of the Indiana Constitution. However she has neither explained that the analysis under the federal and state constitutions is the same nor set out a separate state analysis. Accordingly, her state constitutional argument is waived. *See White*, 772 N.E.2d at 411 (waiving state constitutional argument where appellant provided only federal analysis).

**12.** Whereas, in the Double Jeopardy analysis, we use a case-by case approach. *Ursery*, 518 U.S. at 287, 116 S.Ct. 2135.

**13.** In contrast, the analysis under the Double Jeopardy Clause requires us to determine whether the forfeiture is so punitive we must consider the nominally civil proceeding to be, in fact, a criminal proceeding. *Ursery*, 518 U.S. at 274, 116 S.Ct. 2135. The difference in the tests makes it harder for a defendant to demonstrate forfeiture is "punishment" for double jeopardy purposes.

purposes to conclude that it is subject to the limitations of the Excessive Fines Clause." *Id.* Rather, to remove a statute from the protection created by the Excessive Fines Clause, we must be able to say it serves *only* a remedial purpose. *See Ursery*, 518 U.S. at 286, 116 S.Ct. 2135.

In *Austin*, the Supreme Court considered statutes providing for forfeiture of conveyances used to transport controlled substances and of real property used to commit violations of drug laws punishable by more than a year of imprisonment. *Austin*, 509 U.S. at 605 n.1, 113 S.Ct. 2801. The Court held the forfeitures were subject to the Excessive Fines Clause:

> Fundamentally, even assuming [the statutes at issue] serve some remedial purpose, the Government's argument must fail. "A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." In light of the historical understanding of forfeiture as punishment, the clear focus of [the statutes] on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under [the statutes] serves solely a remedial purpose. We therefore conclude that forfeiture under these provisions constitutes "payment to a sovereign as punishment for some offense," and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause.

*Id.* at 621–22, 113 S.Ct. 2801 (footnote and internal citations omitted).

██ As we discussed above, our forfeiture statutes serve both remedial and pu-

nitive goals. *See Katner*, 655 N.E.2d at 347. In addition, we note that our statutes, like the statutes at issue in *Austin* contain "innocent owner" provisions. *See* Ind.Code § 34–24–1–4(a) ("If the property seized was a vehicle, the prosecuting attorney must also show by a preponderance of the evidence that a person who has an ownership interest of record in the bureau of motor vehicles knew or had reason to know that the vehicle was being used in the commission of the offense."); *see also* Ind.Code § 34–24–1–5 (providing re-payment of a co-owner's interest in forfeited property if the co-owner "did not know of the illegal use"). Accordingly, we hold forfeitures under Ind.Code ch. 34–24–1 are subject to the Excessive Fines Clause. *See Austin*, 509 U.S. at 622, 113 S.Ct. 2801.

██ To determine whether a fine or forfeiture is "excessive," we consider whether "[t]he amount of the forfeiture" bears "some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028. "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.*

██ The trial court ordered forfeited Ellenstein's now twelve-year-old black Cadillac. Ellenstein claims the car is worth $4,500.00, although we found no evidence in the record to confirm that claim. Ellenstein's offense was transporting a pound of marijuana, and her guilty plea allows us to presume she purchased it for sale to others. In addition, while she pled guilty to dealing as a Class A misdemeanor, the amount of marijuana she possessed would have permitted the State to convict her of dealing as a Class D felony,[14] which

---

14. Possession of more than thirty grams makes the crime a Class D felony. *See* Ind.

Code § 35–48–4–10(b)(1)(B). Ellenstein possessed one pound. One pound is equivalent

is punishable by three years imprisonment and a $10,000.00 fine.[15] Ind.Code § 35–50–2–7. Given the negative impact on our society of trafficking in illegal drugs, we are unable to find a $4,500.00 fine grossly disproportional to the gravity of transporting one pound of marijuana with the intent to sell it to others.

### c. *Bill of Attainder Clause*

 Next, Ellenstein claims a forfeiture trial subsequent to a guilty plea is "a one-sided affair rather than an adversarial process as intended by law." (Br. of Appellant at 12.) She asserts such a process violates the Federal Constitution's ban against bills of attainder. U.S. Const. art. 1, § 10 ("No State shall ... pass any Bill of Attainder."). Ellenstein again has waived her argument by failing to provide adequate citation to authority; nevertheless, we address her argument on the merits.

 A bill of attainder is "a legislative Act which inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial." *United States v. O'Brien*, 391 U.S. 367, 383 n. 30, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), *reh'g denied* 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). "In determining whether a particular statute is a bill of attainder, the analysis necessarily requires an inquiry into whether the three definitional elements—specificity in identi-

fication, punishment, and lack of a judicial trial—are contained in the statute." *Id.* In essence, a bill of attainder consists of a "substitution of a legislative for a judicial determination of guilt." *Hamilton v. State ex rel. Van Natta*, 163 Ind.App. 342, 344, 323 N.E.2d 659, 660 (1975), *appeal dismissed* 424 U.S. 901, 96 S.Ct. 1092, 47 L.Ed.2d 306 (1976).

Ind.Code chapter 34–24–1 indicates a judicial trial will occur before the court may order property forfeited.[16] Section 3 provides:

> (a) The prosecuting attorney for the county in which the seizure occurs may, within ninety (90) days after receiving written notice from the owner demanding return of the seized property or within one hundred eighty (180) days after the property is seized, whichever occurs first, cause an action for reimbursement of law enforcement costs and forfeiture to be brought by filing a complaint in the circuit, superior, or county court in the jurisdiction where the seizure occurred....

Ind.Code § 34–24–1–3. Section 4 provides:

> (a) At the hearing, the prosecuting attorney must show by a preponderance of the evidence that the property was within the definition of property subject to seizure under section 1 of this chapter. If the property seized was a vehicle, the

to 453.6 grams. *See* http://www.onlineconversion.com/weight_common.htm" (last visited January 11, 2005).

**15.** We note Ellenstein's sentence for possession with intent to deal as a Class A misdemeanor was one year of imprisonment, which the court suspended, and no fine.

**16.** Ind.Code § 34–24–1–3 contains one exception to its general rule that a judicial trial will occur prior to forfeiture of seized property. That exception is if the owner of the property

fails to respond to the complaint filed by the prosecutor's office. *See* Ind.Code § 34–24–1–3(d) ("If, at the end of the time allotted for an answer, there is no answer on file, the court, upon motion, shall enter judgment in favor of the state and the unit (if appropriate)...."). That exception does not apply to Ellenstein, as she filed an answer to the State's complaint. Therefore, we need not address whether entry of a default judgment is a "judicial trial" for purposes of the prohibition against bills of attainder.

prosecuting attorney must also show by a preponderance of the evidence that a person who has an ownership interest of record in the bureau of motor vehicles knew or had reason to know that the vehicle was being used in the commission of the offense.

(b) If the prosecuting attorney fails to meet the burden of proof, the court shall order the property released to the owner.

Ind.Code § 34–24–1–4.

As the statutes creating the forfeiture procedure indicate a judicial trial occurs prior to the court ordering a person to forfeit his or her property, the statute is not "a virtual bill of attainder" as alleged by Ellenstein. *See Hamilton,* 163 Ind. App. at 345, 323 N.E.2d at 661 (noting the Habitual Traffic Offender Statute is not a bill of attainder because a "finding of guilt in a judicial trial is implicit in" the statute).

### d. *Takings Clause*

■ Ellenstein next claims the "forfeiture statute in practice is a *takings* [sic] without compensation." (Br. of Appellant at 10) (emphasis in original). Ellenstein quotes both the Fifth Amendment to the United States Constitution[17] and Article 1, Section 21 of the Indiana Constitution.[18] However, she again provides no meaningful argument or citation to case law, and her argument is waived.[19] *See West,* 755 N.E.2d at 181 n. 4.

Waiver notwithstanding, Ellenstein's assertions fail. In *Calero–Toledo v. Pearson Yacht Leasing Co.,* the United States Supreme Court addressed whether the forfeiture of a yacht by an innocent owner constituted an impermissible taking of property without just compensation. 416 U.S. 663, 680–90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), *reh'g denied* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). There, the owner of a yacht leased it to two Puerto Rican residents. A year later, the government discovered marijuana on the yacht and charged one of the lessees with violation of controlled substances laws. The government seized the yacht and a court ordered it forfeited to the government.

The owner appealed the forfeiture to the United States Supreme Court, which held the "historical background of forfeiture statutes in this country and this Court's prior decisions sustaining their constitutionality lead to [the] conclusion" that the forfeiture of an innocent owner's property did not amount to an unconstitutional taking without compensation. *Id.* at 680, 94 S.Ct. 2080. *See also Bennis v. Michigan,* 516 U.S. 442, 452, 116 S.Ct. 994, 134

---

17. The Fifth Amendment provides in pertinent part: "Nor shall private property be taken for public use without just compensation."

18. Section 21 of Article 1 provides: "No person's particular services shall be claimed, without just compensation. No person's property shall be taken by law, without just compensation; nor, except in the case of the State, without such compensation first assessed and tendered."

19. Aside from the quotations of the constitutional provisions and the Spencer County Prosecutor's website, Ellenstein's argument consists of six sentences:

> The forfeiture statute in practice is a *takings* [sic] without compensation.
> The common understanding and practice of the forfeiture statute is to take away the property of the accused. Or as other [sic] have put it: to make criminals pay.
> [quotation from Spencer County website]
> It is government permission to take what it can without due compensation. Hence a takings clause infirmity [sic].
> [quotation of constitutional provisions]
> Ms. Ellenstein has not received anything for her car or money.
> (Br. of Appellant at 10–11) (emphasis in original).

L.Ed.2d 68 (1996) (holding the forfeiture of a car based on a violation of nuisance laws was not a taking of private property for public use in violation of the Takings Clause of the Fifth Amendment because "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain"), *reh'g denied* 517 U.S. 1163, 116 S.Ct. 1560, 134 L.Ed.2d 661 (1996).

As for Indiana's provision, in *Judy v. Thompson,* the appellant argued a twenty-five dollar statutory civil penalty [20] violated Article 1, Section 21 of the Indiana Constitution because it was a "taking of the property of the citizen without just compensation." 156 Ind. 533, 534, 60 N.E. 270, 271. Our supreme court held that objection

> might be urged with equal force against the constitutionality of every penal statute where the penalty, or any part of it, is given to the party injured, and yet we know that similar statutes have everywhere been upheld. The penalty in such cases is imposed upon grounds of public policy. The motives of the legislature are not open to judicial inquiry. That there are substantial reasons for such a statutory requirement is very evident.

*Id.* at 534, 60 N.E. at 271. Accordingly, Ellenstein's argument regarding the Takings Clause of the Indiana Constitution also fails.

### e. *Indiana's Common School Fund Provisions*

Ellenstein claims the forfeiture statutes violate the common school fund created in the Indiana Constitution to support schools. The relevant provisions of the Indiana Constitution, as cited by Ellenstein are:

> "Art. I, 2. The Common School fund shall consist of * * * fines assessed for breaches of the penal laws of the State; and from all forfeitures which may accrue* * * *"

> Art. I, 3. The principal of the Common School fund shall remain * * * inviolably appropriated to the support of Common Schools, and to no other purpose whatever."

> "Art. I, 7. All trust funds, held by the State, shall remain inviolate, and be faithfully and exclusively applied to the purposes for which the trust was created."

(Br. of Appellant at 5–6.) [21] Ellenstein quotes public records from two counties demonstrating different law enforcement organizations within each county attempt to access those funds. Based on those records, she asserts the forfeitures do not go into the common school fund in their entirety as the constitution provides they must.

The State argues Ellenstein waived this argument by failing to provide "cogent" argument supported by citation to authority. (Br. of Appellee at 5.) We agree. Aside from her quotation of the three sections from Article 8 of the Indiana Constitution and the public hearings from Vanderburgh and Spencer Counties, Ellenstein's argument consists of four sentences:

---

**20.** The penalty was imposed on any person who "shall refuse, neglect, or fail to release such mortgage of record when the deed or obligation which such mortgage was made to secure shall have been paid or discharged, and he shall have been requested to release the same." *Judy,* 156 Ind. at 533–34, 60 N.E. at 271.

**21.** The sections on which Ellenstein relies are, in fact, found in Article 8.

The forfeiture statute runs afoul of the common school fund of the Indiana Constitution.

[quotation of the three constitutional sections]

The wording of the relevant clauses show that forfeiture must go into the common school fund in their [sic] entirety without exception. Reality demonstrates this does not happen. Public records show that forfeiture proceeds are fought over by many parties not related to the purpose of Indiana's school fund.

(*Id.*) That argument fails to meet the requirements of Ind. Appellate Rule 46(A)(8)(a), and therefore, it is waived. *See, e.g., West,* 755 N.E.2d at 181 n. 4.

■ Waiver notwithstanding, this argument is not available to Ellenstein because she does not have standing to question the use of the funds. *Pennsylvania Co. v. State of Indiana,* 142 Ind. 428, 435–36, 41 N.E. 937, 940 (Ind.1895). In *Pennsylvania Co.,* our supreme court addressed the argument raised herein by Ellenstein and held:

> The objection urged against the act in this respect is that the recovery, treated as a fine or as a forfeiture, was made, by the constitution, a part of the common school fund, and could not be diverted therefrom or diminished by appropriating it to the payment or benefit of public officers. In addition to what was said of this proposition in the former cases, we express our conclusion that the appellant may not avail itself of the objection. The recovery, as far as offenders are concerned, is fixed, not to be recovered by the prosecuting attorney, but by the state of Indiana. If, as insisted, the provision that "one-half * * * shall go to prosecuting attorney" should violate the constitution, that conclusion would not excuse the appellant from paying the

penalty, and would certainly not render invalid that provision which creates the penalty, and subjects the appellant to its payment. If the provision that one-half of the penalty shall go to the prosecuting attorney were unconstitutional, that would be a question properly arising between the state, for the benefit of the common school fund, and such prosecuting attorney.

*Id.*

■ Even if we were to address Ellenstein's argument on the merits, her argument would fail. Ellenstein assumes without analysis or citation to authority that forfeitures under the forfeiture statute are "fines assessed for breaches of the penal laws of the State" as discussed in Article 8, Section 2. As we have explained above, forfeiture statutes are *in rem* civil proceedings against property, not against a person. The forfeiture does not occur automatically upon conviction of a crime; rather a separate proceeding must be conducted by the State. Accordingly, the forfeitures at issue are not the "fines assessed for breaches of the penal laws" discussed in Article 8, Section 2 of the Indiana Constitution. *See Judy,* 156 Ind. at 535, 60 N.E. at 271 (holding Article 8, Section 2 "does not apply to civil actions for the recovery of penalties").

### f. *Indiana's Free Administration of Justice Clause*

■ Article 1, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every man for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ellenstein claims the forfeiture statute violates that provision because the statute "gives police officers and

prosecutors a financial stake in the outcome of investigations and arrests." (Br. of Appellant at 9.)

Ellenstein again waived an issue by failing to provide adequate argument or citation to authority. *West,* 755 N.E.2d at 181 n. 4. Aside from quoting Article 1, Section 12 and the minutes of the Vanderburgh County Board of Commissioners meeting, Ellenstein's "argument" consists of four sentences:

> The forfeiture statute in practice gives police officers and prosecutors a financial stake in the outcome of investigations and arrests. They sue for reimbursement and later divide up the winnings.
>
> [quotation of Commissioners meeting]
>
> The law is clear on the issue. It is not allowed.

(Br. of Appellant at 9–10.) Waiver notwithstanding, Ellenstein's argument fails.

 Article 1, Section 12 of our constitution "was intended to prohibit * * * gratuities or exactions given or demanded for the direct purpose of influencing the course of legal proceedings ... and is to prevent the selling of justice by the sovereign." *Square D Co. v. O'Neal,* 225 Ind. 49, 55–56, 72 N.E.2d 654, 657 (1947) (internal citations and quotations omitted).

The State argues: "The payment of forfeiture proceeds to law enforcement agencies does not involve the prohibited paying of gratuities to influence legal proceedings, or the selling of justice by the government." (Br. of Appellee at 13.) We agree with the State. Requiring the forfeiture of property following a finding the property was used in trafficking of drugs is neither "selling of justice by the sovereign" nor money given "for the direct purpose of influencing the course of legal proceedings." *Square D Co.,* 225 Ind. at 55–56, 72 N.E.2d at 657. Rather it is money or

property forfeited at the *end* of the legal proceeding.

g. *Indiana's Forfeiture of Estate Clause*

 Article 1, Section 30 of the Indiana Constitution provides: "No conviction shall work corruption of blood, or forfeiture of estate." Ellenstein alleges the "manner in which forfeitures are carried out by the Vanderburgh County Prosecutor is a *de facto* violation of Article I, 30[sic] of the Indiana Constitution." (Br. of Appellant at 11.) She claims that because the State does not file for forfeiture proceedings until after a person has pled guilty to an allegation of a forfeiture eligible offense, the "plea bargain becomes a literal forfeiture of estate." (*Id.* at 12.) We disagree.

Our supreme court has held Article 1, Section 30 "prohibits the automatic forfeiture to the State of property upon conviction." *Ballard v. Bd. of Trustees of the Police Pension Fund of the City of Evansville,* 263 Ind. 79, 85, 324 N.E.2d 813, 817 (1975), *appeal dismissed* 423 U.S. 806, 96 S.Ct. 15, 46 L.Ed.2d 27 (1975). In *Ballard,* the court held the property was not automatically forfeited upon conviction because the controlling statute gave the pension board discretion over termination or reduction of pension payments to police officers who were convicted of felonies. *Id.*

Similarly, under the forfeiture statute, forfeiture of property is not automatic after a conviction. Rather, the State must file a separate cause of action under Ind. Code § 34–24–1–3, and then the State must prove the property was used in the commission of the alleged offense. Indeed, the facts of Ellenstein's own case demonstrate forfeiture is not "automatic" after a conviction, because the trial court declined to order Ellenstein to forfeit the $998.00 found in her home and the $100.00 found in her car. Ellenstein's plea bargain

was not an automatic forfeiture of estate in violation of the Indiana Constitution.

## CONCLUSION

Ellenstein's plea of guilty to dealing in marijuana as a Class A misdemeanor under Ind.Code § 35–48–4–10(a)(2)(C), based on her arrest for possessing one pound of marijuana in her Cadillac, was sufficient evidence by which the court could determine the Cadillac had been used to "transport" "a controlled substance" for the purpose of committing dealing in marijuana in violation of Ind.Code § 35–48–4–10. Ind. Code § 34–24–1–1(a)(1)(A)(viii).

Ellenstein's arguments regarding the constitutionality of the forfeiture statute either were waived or failed on their merits. Accordingly, we affirm the forfeiture of Ellenstein's Cadillac.

Affirmed.

VAIDIK, J., concurs.

SULLIVAN, J., concurs as to Part 2(a), 2(b), 2(c), 2(d), 2(f) and 2(g); concurs in result as to Parts 1 and 2(e).